# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

UNITED STATES OF AMERICA,

    Plaintiff,

v.

ALBERT BENJAMIN CHEE

    Defendant.

Case No. 2:14-CR-00033-KJD-CWH

**AMENDED ORDER**

    Before the Court is Defendant's Objection to Magistrate Judge's Decision Denying, in Part, Defendant's Motion for Issuance of Subpoenas (#63). Plaintiff filed a response in opposition (#73).

**Background**

    Defendant is charged with one count of Sexual Contact with a Child under 12, pursuant to18 U.S.C. §§ 1153(a), 2244(a)(5), 2244(c), 2246(3). The facts surrounding this case are straight forward. On December 2, 2013, Mr. Chee visited his sister, Juanita Bark, at her residence. Ms. Bark has two minor daughters, S.B. and M.B. Ms. Bark sent her daughters to bed while Mr. Chee was there. At some point during the visit, Mr. Chee stated he would go to the restroom. Ms. Bark went to check to see if Mr. Chee was in the restroom but did not find him there. When Ms. Bark opened the door to her daughters' bedroom, she alleges Mr. Chee was lying down on the floor next to S.B.'s bed and that his hand was under S.B.'s blanket. Ms. Bark alleges that Mr. Chee was touching S.B.'s vaginal area. Ms. Bark also alleges when she opened the door to her daughters' bedroom M.B. was watching Mr. Chee and S.B.

    According to Defendant's belief, Ms. Bark's ex-husband, the biological father of S.B. and M.B., allegedly molested her daughters. Ms. Bark reported this incident to the authorities, prompting law enforcement to investigate the father for sexual abuse months before the incident at issue in this

case took place. Defendant also believes Ms. Bark has been molested. Defendant believes that Ms. Bark has had psychological problems and that she has had psychological break-downs in the past that resulted in her leaving her house for weeks at a time. As a result, Defendant intends to focus his defense on how the combination of these factors calls into question whether Ms. Bark truly saw what she claims to have seen, or whether the combination of the factors outlined above made Ms. Bark extremely suggestible to perceiving something that did not take place.

Accordingly, Defendant filed a motion (#51) requesting that the Magistrate Judge issue subpoenas to Ms. Bark's identified medical treatment providers instructing them to provide defense counsel with Ms. Bark's medical and mental health records. Plaintiff responded (#57), arguing the motion should be denied because the records are privileged, and Defendant has not shown the relevancy, admissibility, and specificity of the documents sought.

In reply (#59), Defendant explained Ms. Bark's medical and mental health records are relevant to showing whether it is more likely than not that Ms. Bark perceived what she claims to have perceived on December 2, 2013. Defendant further explained the records are admissible as impeachment information relating directly to Ms. Bark's credibility, and, to ameliorate the specificity concerns in the original subpoena request, Defendant limited the time frame to December 2011 to present in an additional request (#59).

The Magistrate Judge held a hearing on the motion ( #60) on November 30, 2015. At the hearing, defense counsel clarified the medical and mental health records sought would be those reflecting any diagnosis or treatment indicating Ms. Bark's ability to perceive was impaired. Defense counsel emphasized Ms. Bark's medical treatment records were integral to Defendant's case because Ms. Bark is the only witness accusing Defendant of touching S.B. inappropriately, and thus the only witness at trial that will offer any testimony that he committed the act for which he is charged. Thus, any medical issue Ms. Bark was diagnosed with or medication she was taking that would interfere with her ability to perceive the incident in this case could bear on her credibility. The Magistrate Judge held that the records were privileged, and denied Mr. Chee's subpoena request. (#60).

This Court withheld a determination on Defendant's objection due to subsequently scheduled hearings on motions containing the same issue. Plaintiff filed an additional Emergency Motion for Issuance of Subpoenas (#70) requesting, again, Ms. Bark's medical and mental health records. The Magistrate held a hearing on this motion (#83), among others, and granted the motion subject to an in camera review of Ms. Bark's records. Although the Magistrate's ruling on Plaintiff's subsequent motion addresses the issue within the present motion, the Court will nonetheless address the merits of Defendant's objection.

**Standard of review**

The trial court reviews a motion to reconsider a magistrate judge's ruling under the "clearly erroneous or contrary to law" standard set forth in 28 U.S.C. §636(b)(1)(A). A factual finding is "clearly erroneous" when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. United States v. Hinkson, 585 F.3d 1247, 1260 (9th Cir.2009) (en banc) (quoting United States v. U.S. Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948)). See also United States v. Ruiz Gaxiola, 623 F.3d 684, 693 (9th Cir. 2010). Though Section 636 (b)(1)(A) has been interpreted to permit *de novo* review of the legal findings of a magistrate judge, magistrate judges are given broad discretion on discovery matters and should not be overruled absent a showing of clear abuse of discretion. Anderson v. Equifax Info. Services LLC, 2007 WL 2412249, at *1 (D.Or.2007).

**Analysis**

The Sixth Amendment provides, in relevant part, that "[i]n all criminal prosecutions, the accused shall enjoy the right to ... be confronted with the witnesses against him [and to] have compulsory process for obtaining witnesses in his favor." U.S. Const. Amend. VI.

With respect to evidentiary privileges, "the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience," except as otherwise provided. FED.R.EVID. 501. Although the Supreme Court created a federal

psychotherapist-patient privilege that covers confidential communications made to licensed psychiatrists, psychologists, and social workers, the Ninth Circuit has not ruled on whether psychotherapist records should be disclosed when a defendant's right to a fair trial, including the right to confrontation, is implicated.

Various courts have dealt with this issue and have held that the defendant should be entitled to these privileged records when the records are integral to the defendant's ability to prepare and present a defense. Other courts have held the opposite.

### A. The Psychotherapist-Patient Privilege

The psychotherapist-patient privilege is first recognized in Jaffee v. Redmond, 518 U.S. 1 (1996) wherein the United States Supreme Court solidified the privacy rights of individuals in protecting the confidentiality of their mental health records from discovery. The court in Jaffe examined FED.R.EVID. 501 which authorizes federal courts to define new privileges by interpreting common law principles in the light of reason and experience. While recognizing that a trial is a search for the truth, the court in Jaffe acknowledged that public policy may require certain exemptions and exceptions to admissibility of evidence. Courts have differed as to whether, and which, statutory or evidentiary privileges can be subordinate to rights under the Sixth Amendment.

In Pennsylvania v. Ritchie, a criminal case predating Jaffe, the defendant was convicted on various counts related to his molestation of his daughter. Prior to his trial, the defendant subpoenaed Children and Youth Services ("CYS"), a protective service agency established by Pennsylvania to investigate cases of suspected child mistreatment and neglect, for certain records relevant to his case. He argued that the records might contain the names of favorable witnesses and other, unspecified, exculpatory evidence. CYS refused to comply with the subpoena, stating that the records were privileged under a state law which provided that all CYS records were confidential, with specified exception. One of the exceptions was that CYS may disclose reports to a court of competent jurisdiction pursuant to a court order. The Supreme Court made two findings applicable to the instant case. First, the court held that since the legislature contemplated some use of CYS records in court,

4

there was no reason to believe that relevant information could not be disclosed when the appropriate court determined that the information was "material" to the defendant's defense. Therefore, it held that the defendant was entitled to have the CYS file reviewed by the trial court to determine whether it contained information that could have changed the outcome of his trial. Ritchie, 480 U.S. 39, 57–58 (1987). However, the court further held that the defendant's right to discover exculpatory evidence did not go so far as to include the unsupervised authority to search Pennsylvania's files and determine the materiality of the information. The court stated that the Pennsylvania Supreme Court had incorrectly interpreted Davis v. Alaska, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), "to mean that a statutory privilege cannot be maintained when a defendant asserts a need, prior to trial, for the protected information that might be used at trial to impeach or otherwise undermine a witness' testimony." Id. at 52.   The court disagreed, stating that

> The right to confrontation is a trial right, designed to prevent improper restrictions on the types of questions that defense counsel may ask during cross-examination....The ability to question adverse witnesses, however, does not include the power to require the pretrial disclosure of any and all information that might be useful in contradicting unfavorable testimony. Normally the right to confront one's accusers is satisfied if defense counsel receives wide latitude at trial to question witnesses....In short, the Confrontation Clause only guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.

Id. at 52–53 (internal citations and quotations omitted; emphasis in original).

Since Jaffee, courts have differed on whether the Sixth Amendment can trump the psychotherapist-patient privilege. In United States v. Doyle, the defendant argued that his Sixth Amendment right to a compulsory process trumped the victim's right to confidentiality. The Government sought an upward sentencing departure due to the victim's extreme psychological injury, and the defendant argued that her psychotherapy records could perhaps dispel her testimony. The court disagreed. It noted that other privileged communications are not subordinate to the Sixth Amendment, and stated that Jaffe made clear that balancing tests are inappropriate. Moreover, the

court declined to conduct an in camera review of the records, noting that "[t]he court's review of the files would itself be a breach of the privilege." Doyle, 1 F.Supp.2d 1187 at 1189 (D.Oregon 1998).

Other cases have reached similar results. See, e.g., Johnson v. Norris, 537 F.3d 840, 845–47 (8th Cir.2008) (rejecting an argument made by a state habeas petitioner that his rights under the Confrontation Clause were violated when the trial court denied him access to the psychiatric records of a witness; and also rejecting an argument that production of psychotherapy records not in the government's possession was required under Brady v. Maryland); Newton v. Kemna, 354 F.3d 776, 779–82 (8th Cir.2004); Petersen v. United States, 352 F.Supp.2d 1016, 1023–24 (D.S.D.2005) (rejecting an argument that the psychotherapist-patient privilege is secondary to a defendant's rights; made in the context of an ineffective assistance of counsel claim made under 28 U.S.C. § 2255); United States v. Haworth, 168 F.R.D. 660, 660–62 (D.N.M.1996) (concluding that the psychotherapy records were privileged after in camera review and not subject to discovery, and stating that the defendants "mistakenly equate their confrontation rights with a right to discover information that is clearly privileged.").

However, other courts have reached a contrary conclusion on this issue. See e.g., Bassine v. Hill, 450 F.Supp.2d 1182, 1185–86 (D.Oregon 2006) (distinguishing Jaffee as a civil case, and holding that the habeas petitioner's rights of confrontation, cross-examination, and due process outweighed the psychotherapist-patient privilege); United States v. Mazzola, 217 F.R.D. 84, 88 (D.Mass.2003) (holding that the societal interest in guarding the confidentiality of communications between a therapist and client were outweighed by a criminal defendant's constitutional right to effectively prepare and cross examine a witness); United States v. Alperin, 128 F.Supp.2d 1251, 1253 (N.D.Cal.2001); United States v. Hansen, 955 F.Supp. 1225, 1226 (D.Mont.1997) (finding that the defendant's need for the privileged material outweighed the interests of the deceased victim and the public in preventing disclosure).

Jaffee does not discuss how the privilege is to be applied when a criminal defendant's constitutional rights are implicated. United States v. Alperin, 128 F. Supp. 2d 1251, 1253 (N.D. Cal.

6

2001). Jaffe left the lower courts with the task of reconciling this privilege with the constitutional rights of a criminal accused, noting that there are situations in which the privilege must give way, for example, if a serious threat of harm to the patient or to others can be averted only by means of a disclosure by the therapist. Other courts have altogether refused to recognize the privilege as precedent in the context of a criminal proceeding. In these pre and post-Jaffe cases, to which Defendant refers, it has been held that "[b]road-brushed assertions of the societal interest in protecting the confidentiality of such information cannot justify the denial of these defendants' right to examine and use this psychiatric information to attack the credibility of a key government witness." United States v. Lindstrom, 698 F.2d 1154, 1167 (11th Cir. 1983). According to the Lindstrom court, "[a] desire to spare a witness embarrassment which disclosure of medical records might entail is insufficient justification for withholding such records from criminal defendants on trial for their liberty." Id.

### B. Balancing Test

Defendant correctly notes that the disparate treatment of these types of cases amongst federal courts necessitates a case-by-case balancing of the asserted privilege against the accused's constitutional rights. In Society of Independent Gasoline Marketers, 624 F.2d 461 (4th Cir. 1979), cert. denied, 449 U.S. 1078 (1981), the Fourth Circuit explicated a process to determine whether it should disclose to the defense a report about the mental health of a chief government witness. The court stated:

> If the report contains only material impeaching the witness, disclosure is required only when there is a reasonable likelihood of affecting the trier of the fact. Whether there is such a likelihood depends upon a number of factors such as the importance of the witness to the government's case, the extent to which the witness has already been impeached, and the significance of the new impeaching material on the witness' credibility. 624 F.2d at 469 (quoting United States v. Figurski, 545 F.2d 389, 391-92 (4th Cir. 1976)).

More specifically, according to the court in Lora v. Board of Educ., 74 F.R.D. 565, 579 (E.D.N.Y. 1977), courts can achieve the proper balance among the competing interests and determine

the amount and type of information that should be disclosed through consideration of the following questions:

> [(1)] Is the identification of the individuals required for effective use of the data?
> [(2)] Is the invasion of privacy and risk of psychological harm being limited to the narrowest possible extent?
> [(3)] Will the data be supplied only to qualified personnel under strict controls over confidentiality?
> [(4)] Is the data necessary or simply desirable?

The Lora court did not explain how it developed these four questions, however, the court's analysis provides a formal framework for the balancing methods used by other federal courts to determine the scope of the psychotherapist-patient privilege.

For example, in United States v. Brown, 479 F. Supp. 1247, 1253 (D. Md. 1979), wherein the defendant moved for a new trial following a conviction for giving false testimony before a grand jury, defense counsel wanted to question the key prosecution witness about her mental and emotional history and requested the trial court to subpoena her mental hospital records.  The witness claimed that the psychotherapist-patient privilege prohibited the defense from acquiring these files.  As a result, the court took "scrupulous measures" to insure that the subpoenaed mental hospital records concerning the government's chief witness were not disclosed frivolously during any of the pretrial hearings or at trial.  The court held in camera hearings and sealed the transcripts of the proceedings.  The court, the witness, and the witness' attorney reviewed the hospital records.  The court then decided that the psychiatric records contained nothing relating to the charges against the defendant, the government's prosecution of the defendant, or to the defendant's relationship with the witness.  Because the records were not sufficiently relevant or material to any issues, including those of credibility and reliability, the defense could not examine the records or use them at trial.  Utilizing the available balancing criteria, the court decided that the psychiatric records were not necessary for determination of any of the issues at trial.

By prohibiting disclosure of all of the requested information, the court did not have to consider how much information was necessary for (1) effective use of the data.   The court limited (2)

the invasion of privacy and risk of psychological harm to the narrowest possible extent by holding in camera hearings and by sealing the transcripts of the proceedings.  Also, (3) only the court, the witness, and the witness' attorney examined the psychiatric records, thus establishing that the requested information was (4) not necessary.  The four-part balancing analysis allows courts to evaluate the interests of the parties to a proceeding and provides courts with a framework for deciding how much and what type of the requested information a party may receive.

### C. Exceptions to the Psychotherapist-Patient Privilege

In addition to considering the balancing criteria that define the scope of the psychotherapist-patient privilege in each case, a court must examine three specific exceptions to the privilege: (1) communications that the patient made with the expectation that they would be disclosed to third parties; (2) communications made pursuant to a judge-ordered mental examination of the patient; and (3) communications concerning a mental condition that the patient raises in court as an element of the patient's defense. See, e.g., In re Zuniga, 714 F.2d 632, 640-41 (6th Cir. 1983) (holding  that the psychotherapist-patient privilege "interests, in general, outweigh the need for evidence in the administration of criminal justice."); In re Pebsworth, 705 F.2d 261, 263-64 (7th Cir. 1983) (finding waiver of privilege for disclosure of treatment to third-party: "In assenting to disclosure of these documents, a reasonable patient would no doubt be aware that routine processing of reimbursement claims would require these records to be brought into the hands of numerous anonymous employees within a large corporation. While we might well have decided differently if the information sought under the subpoena involved detailed psychological profiles of patients or substantive accounts of therapy sessions, it cannot be said that the subsequent disclosure of such fragmentary data as is involved here as part of the insurance company's legal duties in assisting a federal criminal investigation would be beyond the contemplation of the patients' waiver."); U.S. v. Meagher, 531 F.2d 752, 753 (5th Cir. 1976) (defendant raising own mental state as element of defense); U.S. v. Harper, 450 F.2d 1032, 1034 (5th Cir. 1971) (court-ordered examination); Ramer v. U.S., 411 F.2d 30, 39-41 (9th Cir. 1969) (court-ordered examination); U.S. v. Layton, 90 F.R.D. 520, 522 (N.D. Cal.

1981) (defendant raising own mental state as element of defense); See also, In re Doe, 964 F.2d 1325, 1329 (2d Cir. 1992) (holding that "the privilege amounts only to a requirement that a court give consideration to a witness's privacy interests as an important factor to be weighed in the balance in considering the admissibility of psychiatric histories or diagnoses").

No exceptions to the privilege are present in this case. While FED.R.CRIM.P. 17(c) governs all trial subpoenas duces tecum, the Ninth Circuit instructs that a "Rule 17(c) subpoena is not intended to serve as a discovery tool." U.S. v. MacKey, 647 F.2d 898, 901 (9th Cir. 1981); see e.g., United States v. Haworth, 168 F.R.D. 660 (D.N.M. 1996) (Wherein the defendants argued that the confrontation clause overcame the psychotherapist-patient privilege and that they were therefore constitutionally entitled to discover the records of a government witness's psychotherapist. The court easily rejected the argument, citing precedent establishing that while the right to confrontation may permit the defendant to employ information on cross-examination, it does not translate into a discovery right).

Since no exceptions to the physician-patient privilege are present in this case, the Court balances defendant's interest in receiving a fair trial, including the opportunity to conduct a full cross-examination and to impeach Ms. Bark, against the need to spare Ms. Bark from "unnecessary invasion of privacy as well as to spare her from harassment, annoyance or humiliation." United States v. Brown, 479 F. Supp. 1247 (D. Md. 1979). Defendant's amended subpoenas filed with their Objection, seek "diagnoses and prescribed medication for [Ms. Bark] from December 2011 to present." (#63 Ex.1).  Here, Defendant has failed to "establish with sufficient specificity the evidentiary nature of the materials" requested as there appears to be mere speculation as to what her records contain. United States v. Hardy, 224 F. 3d 752, 755-756 (8th Cir. 2000) (rejecting a defendant's claim that materials would contain impeachment material, noting that although the defendant stated why he wanted the requested materials, he "[could not] set forth what those materials contain.") The Court also notes the relevance of the request to Defendant's case and accordingly adopts an approach similar to that of the court in Brown. Therefore, the Court finds that

the facts of this case necessitate an in camera review of Ms. Bark's psychotherapy records, specifically regarding her diagnoses and prescribed medication from December 2011 to present.

**Conclusion**

Accordingly, **IT IS SO ORDERED** that Defendant's Objections to the Magistrate's Decision Denying in Part Defendant's Motion for Issuance of Subpoenas (#63) is **GRANTED**.

**IT IS FURTHER ORDERED** that by June 20, 2016, the Las Vegas Paiute Tribe Health and Human Services shall provide, directly to the Court for in camera review, the requested documents pertaining to Ms. Bark's psychotherapy records. The documents shall be organized in a manner responsive to the request.

Dated this 14th day of June 2016.

_____
Kent J. Dawson
United States District Judge